EMMA LUEVANO (SBN 198421)
eyl@msk.com
COREY G. SINGER (SBN 300334)
cgs@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendant
AMERICAN BROADCASTING
COMPANIES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAPHAELLE BARDET, in her representative capacity, and on behalf of all others similarly situated,<br><br>       Plaintiff,<br>  v.<br><br>AMERICAN BROADCASTING COMPANIES, INC., a foreign corporation; and DOES 1 through 50, inclusive,<br><br>       Defendants. | CASE NO. 2:22-cv-816<br><br>**DEFENDANT AMERICAN BROADCASTING COMPANIES, INC.'S NOTICE OF REMOVAL**<br><br>(Removed from LASC Case No. 22STCV00195)<br><br>(Federal Question Jurisdiction: 28 U.S.C. §§ 1331, 1441)<br><br>[*Civil Cover Sheet, Declaration of Emma Luevano, and Certificate of Interested Parties and Corporate Disclosure Statement, filed concurrently herewith*] |

**NOTICE OF REMOVAL**

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF RAPHAELLE BARDET AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant American Broadcasting Companies, Inc. (hereinafter "Defendant") hereby removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 1331, 1367, and 1441. Pursuant to 28 U.S.C. Section 1446(d), removal of this action is effective upon notice and will immediately and automatically terminate all proceedings in the Superior Court for the County of Los Angeles. Defendant's removal of this action is proper for the reasons set forth below.

1. <u>Federal Question Jurisdiction</u>: This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1331, as it is an action arising under federal law. As set forth in greater detail below, this action is preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 141, *et seq*., because it is based on rights created by and requires the interpretation of a collective bargaining agreement governing the terms and conditions of the services that Plaintiff purportedly provided to Defendant. This action, therefore, may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. Section 1441(a) and (c).

2. On or about January 3, 2022, Plaintiff Raphaelle Bardet ("Plaintiff" or "Bardet"), filed a Complaint captioned *Raphaelle Bardet v. American Broadcasting Companies, Inc., et al.*, Case No. 22STCV00195, in the Superior Court of the State of California for the County of Los Angeles (the "State Court Action").

3. The Complaint centers around the services that Plaintiff purportedly provided as a model/performer on or around February 25, 2021 in a taped performance given by the artist Kelly Rowland that thereafter aired on the television

show, *Good Morning America*. Defendant produces *Good Morning America*, but did not produce Ms. Rowland's taped performance.

4. Plaintiff's Complaint alleges six causes of action: (1) failure to pay wages in violation of California Labor Code Sections 218, 218.5 and 218.6; (2) failure to provide rest breaks in violation of California Labor Code Sections 512 and 226.7; (3) waiting time penalties pursuant to California Labor Code Section 201.5; (4) failure to furnish accurate itemized wage statements in violation of California Labor Code Section 226; (5) unfair and unlawful business practices under California Business and Professions Code Section 17200; and (6) a violation under California's Private Attorneys General Act, California Labor Code Section 2698.

5. <u>Removal is Timely</u>: On January 6, 2022, Defendant's designated corporate agent for service of process was personally served with copies of the Summons and Complaint in the State Court Action. 28 U.S.C. Section 1446(b) states that removal papers shall be filed within 30 days of service of the Complaint on Defendant. Here, the 30th day of service of the Complaint fell on Saturday, February 5, 2022. Pursuant to the Federal Rules of Civil Procedure 6(a)(1)(C), "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Because Defendant filed this Notice of Removal on Monday, February 7, 2022, it is therefore timely under 28 U.S.C. Section 1446(b).

6. Defendant is informed and believes that no "Doe" defendant has been identified and therefore no other defendant has been served with a copy of the Summons and/or the Complaint. This action may be removed by Defendant to federal court pursuant to 28 U.S.C. Section 1441.

7. <u>Copies of All Process, Pleadings, and Orders</u>: To the best of Defendant's knowledge, the pleadings and documents filed and/or served in the State Court Action consist of:

(a) The Complaint, filed on January 3, 2022 and served on Defendant on January 6, 2022, which is attached as Exhibit A to the Declaration of Emma Luevano ("Luevano Declaration"), filed concurrently herewith;

(b) The Summons, issued on January 3, 2022 and served on Defendant on January 6, 2022, which is attached as Exhibit B to the Luevano Declaration;

(c) The Civil Case Cover Sheet, filed on January 3, 2022 and served on Defendant on January 6, 2022, which is attached as Exhibit C to the Luevano Declaration;

(d) The Notice of Case Assignment – Unlimited Civil Case, filed on January 3, 2022 and served on Defendant on January 6, 2022, which is attached as Exhibit D to the Luevano Declaration;

(e) Proof of Service of Summons, filed by Plaintiff on January 10, 2022 and obtained through Westlaw as it does not appear that Defendant was served with this document, which is attached as Exhibit E to the Luevano Declaration; and

(f) Defendant's Answer to Plaintiff's Unverified Complaint, filed on February 4, 2022 and served on Plaintiff on February 4, 2022, which is attached as Exhibit F to the Luevano Declaration.

Accordingly, complete copies of all process, pleadings, and orders served upon Defendant in the State Court Action, along with other pleadings and orders not yet served on Defendant, are attached as Exhibits A to F to the Luevano Declaration, pursuant to 28 U.S.C. Section 1446(a).

8. <u>Venue</u>: The Complaint is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1331 (federal question jurisdiction), and is one which may be removed to this Court pursuant to 28 U.S.C. Section 1441(a) ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the

Mitchell Silberberg & Knupp LLP

4
**NOTICE OF REMOVAL**

1 place where such action is pending"). The Los Angeles County Superior Court is located within the Central District of California. Accordingly, removal to the United States District Court for the Central District of California is proper. *See* 28 U.S.C. § 1441(a).

9. Federal Question Jurisdiction Exists: Section 301(a) of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

10. As applied, Section 301(a) wholly preempts any and all purported state law causes of action by an individual concerning a dispute over her terms and conditions of purported employment, if the causes of action are "based directly on rights created by a collective bargaining agreement" or require the "interpretation of a collective bargaining agreement." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010 (9th Cir. 2000); *Audette v. ILWU Local 24,* 195 F.3d 1107, 1112 (9th Cir. 1999) ("where the position in dispute is covered by [a] [collective bargaining agreement], the [collective bargaining agreement] controls and any claims seeking to enforce the terms of" an independent contract pertaining to that position "are preempted") (internal quotation marks and citations omitted); *Firestone v. S. Cal. Gas Co.*, 281 F. 3d 801, 802 (9th Cir. 2002) ("a state law claim is preempted [by Section 301] if it necessarily requires the court to interpret an existing provision of a collective bargaining agreement that can reasonably be said to be relevant to the resolution of the dispute") (internal quotation marks and citations omitted).

11. "[S]ection 301 preemption is extraordinarily strong" and exists to eliminate the "possibility that individual contract terms might have different meanings under state and federal law [as that] would inevitably exert a disruptive

influence upon both the negotiation and administration of collective agreements." *Moreau v. San Diego Transit Corp.*, 210 Cal. App. 3d 614, 622 (1989) (first quote); *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962) (second quote).

12. Where a federal claim completely preempts a state claim, a complaint coming within the scope of the federal claim necessarily arises under federal law and is removable. *See Young v. Anthony's Fish Grottos*, 830 F.2d 993, 997-98 (9th Cir. 1987).

13. And, pursuant to the "artful pleading" doctrine, even if the plaintiff omits reference to the collective bargaining agreement ("CBA") in her lawsuit or purports to base her claims on state law, those claims will nevertheless be deemed to arise under LMRA Section 301(a) if they are based on rights created by the collective bargaining agreement or require interpretation of that agreement. *Hyles v. Mensing*, 849 F.2d 1213, 1215-16 (9th Cir. 1988) (even if no federal question appeared on the face of the complaint, removal was proper because state action was really a claim for breach of the CBA and thus preempted by Section 301); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1048 (9th Cir. 1987) ("Stallcop's complaint does not reveal that her employment is governed by a collective bargaining agreement, but this is not dispositive . . . . [I]f the complaint actually raises a section 301 claim on the collective bargaining agreement, even though it is framed under state law, the claim is preempted.").

14. Defendant American Broadcasting Companies, Inc. is an "employer" of employees in an industry affecting commerce, as defined by the LMRA.

15. The Screen Actors Guild – American Federation of Television and Radio Artists ("SAG-AFTRA") is a "labor organization" as defined by the LMRA.

16. At all times relevant to the Complaint, Defendant and SAG-AFTRA were parties to a CBA known as the SAG-AFTRA National Code of Fair Practice for Network Television Broadcasting (the "Network Code"). The Network Code

covers work and services provided by performers that air on live action, non-prime time television programs. The 2014-2018 SAG-AFTRA Network Code ("2014 Network Code") is attached as Exhibit G to the Luevano Declaration. In addition, there is a 2018 Memorandum of Agreement ("2018 MOA"), reflecting modifications to the Network Code agreed upon by SAG-AFTRA and the broadcast television networks (including Defendant) for the term of July 1, 2018 to June 30, 2021. The MOA is attached as Exhibit H to the Luevano Declaration.[1] The 2014 Network Code and 2018 MOA are "contracts" between a "labor organization" and an "employer" as those terms are defined by the LMRA Section 301(a).[2]

17. Plaintiff's Complaint does not specify whether she is a SAG-AFTRA member. Irrespective of whether Plaintiff is a SAG-AFTRA member or not, Defendant is a signatory to the Network Code, and Defendant has agreed that any individual who provides services in a CBA-covered role (even if not Defendant's employee) is bound by its terms. *See* Luevano Decl., Ex. G at § 93 ("Producer agrees that he has notice that this Code represents the minimum terms and working conditions of performers in live network television broadcasting."). The reason for such agreement is to ensure that the working terms and conditions negotiated by SAG-AFTRA are not undermined by the networks, regardless if they employ or do not employ the performers that air on their live action, non-prime time television programs, such as *Good Morning America*.

---

[1] All cited references to the 2014 Network Code in this Notice of Removal are unchanged by the 2018 MOA, unless expressly specified.

[2] Courts within this Circuit have frequently taken judicial notice of a CBA as "such documents properly are considered [ ] materials 'not subject to reasonable dispute' because they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180, 1187 (E.D. Cal. 2016) (quoting *Jones v. AT&T*, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008)); *see also Johnson v. Sky Chefs, Inc.*, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012) ("[c]ourts routinely take judicial notice of the governing [CBA] where necessary to resolve issues of preemption").

18. According to SAG-AFTRA, the services that Plaintiff purportedly provided – as a model/performer in a taped performance by the artist Kelly Rowland that aired on the television show, *Good Morning America* – are governed by the Network Code. *See* Luevano Decl., Ex. G at § 3(A) (reflecting the terms and conditions for performers who speak five lines or less in a single program performance), § 33 (models are paid at the rate for performers who speak five lines or less). The only capacity in which Plaintiff purportedly provided services to Defendant at the time of the events described in the Complaint was as a model/performer on Ms. Rowland's pre-taped television performance which SAG-AFTRA maintains is covered by the terms of the Network Code.

19. Because Plaintiff purportedly held a role covered by the Network Code, that agreement controls the terms and conditions pursuant to which she provided services. As relevant here, *inter alia,* the Network Code:

    a. Prescribes rates of pay based on the type of project for which services are rendered. Luevano Decl., Ex. G at §§ 3(A), 33;

    b. Prescribes additional hourly rates if a performer accrues additional rehearsal hours greater than the minimum amount included as part of the base rate. *See id.* at §§ 3(A), 13-15;

    c. Sets forth any rights and obligations with respect to meal and rest periods. *See id.* at §§ 16, 22, 23; and

    d. Subjects certain disputes to arbitration, including, but not limited to, compensation-related claims. *See id.* at § 95.

20. In addition, the Network Code requires a myriad of premiums for different kinds of work and services, but a few examples follow:

    a. "Performers, including background actors, supplying personal wardrobe, shall receive a wardrobe maintenance fee of $10.00 per garment, except that the fee for formal evening war and genuine furs (coats, jackets, capes, and stoles) shall be $25.00." Luevano Decl., Ex. G at § 25;

b. "A performer taking part in hazardous action or working under hazardous conditions shall be paid additional compensation of $100.00 per program." *Id.* at § 39;

c. "If the performer furnishes his own automobile he shall be paid in accordance with company policy, if the company has an established policy, but in no event less than $3.00 per day. If the Company has no established policy, the performer shall be paid thirty cents (30¢) per mile, but in no event less than $3.00 per day." *Id.* at § 43; and

d. "If a performer is required to grow a beard or mustache, or to shave his head, the performer shall be paid additional compensation of $35.00." *Id.* at § 50.

21. With respect to rest periods, the Network Code provides that "[t]here shall be at least a five (5) minute rest period provided during every hour of rehearsal. If a request by the contractor, deputy or authorized SAG-AFTRA representative to give such rest period to dancers is ignored or denied by Producer, each dancer shall be paid $5.00 for each such violation of the rest-period rule." Luevano Decl., Ex. G at § 22.

22. With respect to meal periods, in the event a first meal period is not provided within six hours between first call and first meal, the Network Code states that the "Producer shall be required to pay in addition to any other fees a sum of $25.00 to such performer for such first meal period missed." And "[i]f a second or succeeding meal period is not given, a $35.00 missed meal period penalty shall be incurred." Luevano Decl., Ex. G at § 23.

23. Section 301 preemption claims are analyzed under the two-step framework described in *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007):

> First, a court must determine whether the asserted cause of action involves a right conferred upon an employee by virtue of

> state law, not by a CBA. **If the right exists solely as a result of the CBA, then the claim is preempted, and the analysis ends there.** If the court determines that the right underlying the plaintiff's state law claim(s) exists independently of the CBA, it moves to the second step, asking whether the right is nevertheless substantially dependent on analysis of a collective-bargaining agreement. Where there is such substantial dependence, the state law claim is preempted by § 301.

*Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032-33 (9th Cir. 2016) (internal quotations and citations omitted) (emphasis added); *see also Alaska Airlines v. Schurke*, 898 F.3d 904, 920-21 (9th Cir. 2018) ("If a claim arises entirely from a right or duty of the CBA – for example, a claim for violation of the labor agreement . . . it is, in effect, a CBA dispute in state law garb, and is preempted.").

24. Plaintiff's claims – failure to pay wages, failure to provide rest breaks, failure to provide accurate wage statements, a derivative UCL claim, and PAGA claim (based on the aforementioned Labor Code violations and a failure to provide meal breaks) – are clearly preempted by Section 301.

25. Here, although Plaintiff was not employed by Defendant (and, instead, on Defendant's information and belief, was employed by the production company that produced the pre-taped performance), there can be no reasonable dispute that the rate applicable to the services that Plaintiff purportedly provided to Defendant (including payment for the performance on *Good Morning America*), as well as any pertinent premiums that should be factored into that rate, are created *solely* by the Network Code and are not required by (nor do they even have any analogue in) the California Labor Code. Plaintiff does not and cannot allege otherwise. As a result, because Plaintiff seeks to enforce a "right [that] exists solely as a result of the CBA . . . the claim is preempted, and the analysis ends there." *Kobald*, 832 F.3d at 1032.

26. The same is true with respect to Plaintiff's failure to provide rest and meal period allegations, as they create obligations on Defendant that do not exist anywhere in the California Labor Code (*e.g.*, providing a five-minute rest break every hour of rehearsal and/or mandating a $25 as a penalty for a first missed meal break). Whenever a claim – even one in "state law garb" – is based on rights created solely by a CBA, it is preempted to the same extent as claims directly alleging a breach of the CBA. *See*, *e.g.*, *Partida v. Stater Bros. Markets*, 2019 WL 1601387, at *4 (C.D. Cal. Feb. 19, 2019) (CBA provided for double-time for hours in excess of 10 per workday rather than state law standard of 12; "The Court finds that Plaintiff's Overtime Claim is preempted under *Burnside* prong 1 because the CBA confers rights on the Plaintiff which state law does not."); *Buckner v. Universal Television, LLC*, 2017 WL 5956678, at *2 (C.D. Cal. 2017) (CBA provided for overtime and "golden hours" that differed from state law and FLSA requirements; "the LMRA preempts Plaintiff's overtime claim under the first step of the *Burnside* test . . . Plaintiff's overtime rights arise exclusively out of the CBAs, and the LMRA preempts Plaintiff's overtime claim").

27. Finally, that Plaintiff is asserting a PAGA cause of action does not preclude preemption. Plaintiff and other aggrieved employees' entitlement to civil penalties for Defendant's alleged failure to pay wages, provide rest and meal breaks, and provide accurate wage statements arises solely from the CBA applicable to the services that Plaintiff purportedly provided to Defendant and are, therefore, preempted. *See, e.g.*, *Landy v. Pettigrew Crewing, Inc.,* 2019 WL 6245525, at *1 and *5 (C.D. Cal. Nov. 22, 2019) (holding that the plaintiff's PAGA claim, which was based on defendant's alleged violations of California Labor Code Section 204, were preempted under Section 301); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1202 (C.D. Cal. 2015) 1204 (finding that the PAGA claim was preempted).

28. For these reasons, Plaintiff's claims – all of which are predicated on some violation of the California Labor Code – are not free-standing, but are instead "inextricably intertwined" with the Network Code, preempted and thus arising under federal law. *Audette*, 195 F.3d at 1112.

29. <u>Supplemental Jurisdiction</u>: As discussed above, this Court has supplemental jurisdiction over any such portion of the claim in that it is so related as to be part of the same case or controversy. *See* 28 U.S.C. § 1367. Indeed, here, Plaintiff specifically bases all of her causes of action on the services that she purportedly provided to Defendant as part of a taped performance that aired on *Good Morning America. See id.*; *see also Bale v. Gen. Tel. Co.*, 795 F.2d 775, 778 (9th Cir. 1986) (all claims arising from the same alleged representations made at time of hiring "fall within the scope of pendent jurisdiction"). Moreover, considerations of judicial economy, convenience, and fairness to the litigants require that all causes of action alleged in the Complaint should be tried in one forum. *See Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) ("Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is 'a common nucleus of operative fact between the state and federal claims….The decision to retain jurisdiction over state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity.") (Internal citations omitted). For these reasons, Defendant respectfully requests that this Court assume jurisdiction over any such claim which it deems to be supplemental.

30. In addition, and in the alternative, even if supplemental jurisdiction did not exist, any non-preempted cause of action may properly be removed to this Court pursuant to the provisions of 28 U.S.C. Section 1441(c), in that any claim has been joined with claims which would have been removable if sued upon alone, and, therefore, the entire case may be removed on the basis of federal jurisdiction.

31. Based on the above, this Court has both original and supplemental jurisdiction over this federal question action pursuant to 28 U.S.C. Section 1331, and removal is appropriate pursuant to 28 U.S.C. Section 1441(a).

32. <u>Venue within this District</u>:  Removal is proper to the Central District of California, Western Division because the State Court Action was filed in Los Angeles County, California.

33. <u>Notice to Adverse Parties and State Court</u>:  A written notice as required by 28 U.S.C. Section 1446(d) addressed to the adverse party and to the Clerk of the Superior Court for Los Angeles County, California will be filed promptly in the state court and served on Plaintiff's counsel upon the filing of this Notice of Removal.

DATED: February 7, 2022

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP
EMMA LUEVANO
COREY G. SINGER

By: /s/ Emma Luevano
Emma Luevano
Attorneys for Defendant
AMERICAN BROADCASTING SERVICES, INC.